## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| **PAUL GERLICH and ERIN FURLEIGH,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| **STEVEN LEATH, WARREN MADDEN,** | ) | **COMPLAINT FOR INJUNCTIVE** |
| **THOMAS HILL, and LEESHA** | ) | **AND DECLARATORY RELIEF** |
| **ZIMMERMAN,** | ) | **AND DAMAGES** |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

Plaintiffs Paul Gerlich and Erin Furleigh complain of Defendants and allege:

## I.    INTRODUCTION

1.      "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).  This is particularly true of public universities, where "[t]eachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).  The freedoms of speech, assembly, and petition must be zealously guarded because "[t]he college classroom with its surrounding environs is peculiarly the 'marketplace of ideas.'" *Healy v. James*, 408 U.S. 169, 180 (1972).

2.      Recognizing the gravity of these principles, the United States Supreme Court has held that "state colleges and universities are not enclaves immune from the sweep of the First Amendment." *Id*.  Nevertheless Iowa State University ("ISU") and the individual Defendants have violated the First Amendment rights of the Plaintiffs and the ISU chapter of the National Organization for the Reform of Marijuana Laws ("NORML") through viewpoint-based application of the University's trademark policies.

3.      First, the Defendants withdrew approval of the NORML ISU chapter's t-shirt design after state officials and some members of the public complained about its political message advocating the legalization of marijuana.  Second, the Defendants adopted and enforced new trademark regulations expressly to restrict NORML ISU's message.  Third, the Defendants rejected two additional t-shirt designs, including one that stated "NORML ISU Supports Marijuana Legalization."  Defendants claimed that the designs violate ISU's vague and overbroad prohibition against promoting "dangerous, illegal or unhealthy products, actions or behaviors" and "drugs and drug paraphernalia that are illegal or unhealthful."  In doing so, the Defendants confused political advocacy with illegal conduct and, in the process, suppressed speech protected by the First Amendment.

4.      More than 70 years ago, in the darkest days of World War II, the Supreme Court said "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion."  *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).  Defendants, however, have hindered NORML ISU from challenging the orthodoxy that marijuana use should be prohibited.  By using its trademark licensing policy to dictate acceptable ways for NORML ISU to express ideas, Defendants ignored the Supreme Court's axiom that "the government may not regulate speech based on its substantive content or the message it conveys."  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995).

5.      Students Paul Gerlich and Erin Furleigh and the more than 500 members of NORML ISU, want to advocate a policy change that is being implemented in a growing number of states – the legalization of marijuana.  By policy and practice, however, ISU unlawfully

restricts its students' and faculty's constitutional right to free expression and it has acted specifically to restrict the Plaintiffs' rights.

6.      This civil rights action seeks to protect and vindicate Plaintiffs' freedoms under the First and Fourteenth Amendments to the United States Constitution.  As set forth in this complaint, Plaintiffs Gerlich and Furleigh challenge ISU's policies and enforcement practices both on their face and as applied.  This action seeks declaratory and injunctive relief, damages, and attorneys' fees.

## II.    JURISDICTION AND VENUE

7.      This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

8.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

9.      This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

10.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

11.     This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

12.     Venue is proper in the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the instant claim occurred within this District and because at least one Defendant resides in this District.

### III.    PLAINTIFFS

13.    Plaintiff Paul Gerlich is, and was at all times relevant to this Complaint, a resident of Ames, Iowa, and he is presently a student at Iowa State University.  He is the current president of the NORML chapter at ISU.

14.    Plaintiff Erin Furleigh is, and was at all times relevant to this Complaint, a resident of Ames, Iowa, and she is presently a student at Iowa State University.   She is the current vice-president of the NORML chapter at ISU.

### IV.    DEFENDANTS

15.    Defendant Steven Leath is, and was at all times relevant to this Complaint, President of Iowa State University.  He is ISU's chief executive officer, responsible for ISU's administration and policy-making, including the policies and procedures challenged herein that were applied to deprive Plaintiffs Gerlich and Furleigh of their constitutional rights.  Defendant Leath acquiesced in, sanctioned, and supported the actions of Defendants Warren Madden, Thomas Hill, and Leesha Zimmerman in enforcing these policies against Plaintiffs Gerlich and Furleigh.  Defendant Leath acted under color of state law and is sued both in his personal and official capacities.  *Ex parte Young*, 209 U.S. 123 (1908).

16.    Defendant Warren R. Madden is, and was at all times relevant to this Complaint, Senior Vice-President, Division of Business & Financial Affairs at ISU.  He is the chief business officer of Iowa State University, responsible for enactment and enforcement of ISU trademark licensing polices, including the policies and procedures challenged herein.  Defendant Madden acquiesced in, sanctioned, and supported the actions of Defendant Leesha Zimmerman in enforcing these policies against Plaintiffs Gerlich and Furleigh as set forth in this Complaint.  Defendant Madden acted under color of state law and is sued both in his personal and official capacities.  *Ex parte Young*, 209 U.S. 123 (1908).

4

17.     Defendant Thomas Hill is, and was at all times relevant to this Complaint, Senior Vice President for Student Affairs at ISU.  As the leader of the Division of Student Affairs, he is responsible for implementing its "mission and vision," while managing the division's personnel and resources and participating in the University's leadership/management team.  He supported and rationalized enforcement of the policies and procedures challenged herein.  Defendant Hill acted under color of state law and is sued both in his personal and official capacities.  *Ex parte Young*, 209 U.S. 123 (1908).

18.     Defendant Leesha Zimmerman is, and was at all times relevant to this Complaint, the Program Director of the Trademark Licensing Office ("Trademark Office") at Iowa State University.  Defendant Zimmerman possesses delegated authority to license use of ISU trademarks, and in that capacity she denied approval of the NORML ISU t-shirt designs.  Defendant Zimmerman acted under color of state law and is sued both in her personal and official capacities.  *Ex parte Young*, 209 U.S. 123 (1908).

## V.     STATEMENT OF FACTS

### A.     Background

19.     The legalization and decriminalization of marijuana has been the focus of an intense nationwide political debate for decades.  Currently, two states have legalized marijuana for recreational use, while twenty-one states and the District of Columbia have approved medical uses of marijuana.  In the remaining states – including Iowa – citizens and policymakers continue to discuss whether, and how, government policies toward marijuana should be changed.  This year, the Iowa legislature considered legislation to legalize marijuana for certain medical uses.  *E.g.*, William Petroski, *Medical Cannabis Bill Approved 36-12 by Iowa Senate*, DES MOINES REGISTER, April 24, 2014.

20.     NORML has been actively involved in such policy debates and petitioning activities since its founding in 1970 as a national organization dedicated to "mov[ing] public opinion sufficiently to legalize the responsible use of marijuana by adults . . . ."  NORML has more than 135 chapters nationwide, including on America's college campuses.

21.     Students at Iowa State University, including the Plaintiffs, have been engaged in these public policy debates and petitioning activities.  Like the national organization with which it is affiliated, NORML ISU advocates reform of existing laws governing marijuana to permit its responsible use by adults.  The ISU campus chapter has provided information on the legalization issue by publishing a website, hosting events, conducting student outreach, and other related activities.

22.     Since 2012, NORML ISU has been an approved campus organization in the "political & activism" category.  *See* The Iowa State Chapter of the National Organization for the Reform of Marijuana Laws (available at https://sodb-stuorg.sws.iastate.edu/view-details.php?id=1954).  Its statement of purpose provides that the organization shall promote a better understanding of the current status of laws concerning cannabis (marijuana) in the state of Iowa and in the United States at large and will work to advance the medical, legal, environmental, economic, and civil libertarian arguments for more reasonable treatment of cannabis in the laws of the state of Iowa and the United States.  *Id.*   The University's website for NORML ISU currently lists over 500 members.  *Id.*

23.     NORML ISU's members meet regularly to promote "innovative ideas as well as division of labor regarding and consisting of, but not limited to: publicity, event planning, political activism, organizational necessities, budgeting, apparel, and philanthropy."  *Id.*   The listing of "apparel" among the organization's activities involves the production of shirts carrying

messages designed to raise awareness of NORML ISU while promoting the political cause for which it was founded.

24.     It is this activity ("apparel") that became the target of Defendant's viewpoint-based application of the University's Guidelines for University Trademark Use By Student and Campus Organizations ("Trademark Guidelines") (attached hereto as Ex. A).

25.     ISU's Trademark Office administers a licensing program that governs the use of all University trademarks.  The University has secured a federal trademark for the abbreviation "ISU."  Student and campus organizations may use the letters ISU, the University's full name, and/or other marks consistent with their recognized status with the University, but only after the Trademark Office has reviewed the use and determined that it complies with the design standards established by the University.

26.     ISU has delegated the management of its marks to the Trademark Office, which is directed by Defendant Zimmerman, and is "housed under the Office of Senior Vice President for Business and Finance," Defendant Madden.

27.     Through the arbitrary application of hastily contrived and poorly defined guidelines, the Defendants denied approval of two different NORML ISU t-shirt designs, after rescinding approval of another.  Each of those designs was intended to raise awareness of the organization and to convey political messages by Plaintiffs, by NORML ISU, and by those wearing the apparel.

**B.     Specific Violations**

**(1)     Meeting on November 30, 2012**

28.     In October 2012, NORML ISU submitted a t-shirt design to the Trademark Office that had the name of the organization on the front with the "O" in "NORML" represented by the head of the school's mascot ("Cy the Cardinal").  The text on the back of the shirt read,

"Freedom is NORML at ISU" with an image of a small cannabis leaf above the acronym "NORML."

29.     This t-shirt design met all the University guidelines for student organization t-shirts in effect at the time, and the ISU Trademark Office approved it for production and sale.

30.     In accordance with University rules, NORML ISU initially ordered 100 t-shirts from a university-approved vendor, with payment due on delivery. The t-shirts sold out within a week.  The group then placed a follow-up order for $500 worth of t-shirts.  That order was never fulfilled because of a subsequent administrative decision and the willful and knowing acts of Defendants.

31.     On November 19, 2012, a front page article appeared in the *Des Moines Register* discussing legalization of marijuana that included a picture of the then student president of NORML ISU wearing the organization's t-shirt, described in ¶ 28.

32.     Shortly thereafter, on or about November 30, 2012, Defendants Hill and Madden called a meeting on short notice with representatives of NORML ISU.  At the meeting, attended by Plaintiff Furleigh, Defendants told the students that ISU had rescinded approval of the t-shirt design.

33.     Defendants Hill and Madden contended that having the school's mascot's head replace the "O" of NORML, suggested that ISU itself was supporting marijuana legalization.  To support their claim, the Defendants mentioned a critical Letter to the Editor published by the *Des Moines Register*.

34.     On information and belief, the news article prompted state legislators and private citizens to complain that ISU's mascot had been used on a shirt promoting the legalization of marijuana.  ISU reacted to the complaints by revoking its prior approval of the t-shirt design.

*See ISU Student Group Banned From Producing More Shirts Using Cy Logo*, THE DES MOINES REGISTER, Nov. 30, 2012 (attached hereto as Ex. B).

35.      Defendants Hill and Madden admitted at the November 30 meeting that they feared that the t-shirt posed a financial threat to ISU, either through loss of state funding or alumni donations.

36.      Defendants Madden and Hill also informed the students at the November 30 meeting that their group adviser, James Wilson, had been removed.  Mr. Wilson is a member of ISU's custodial staff and previously had obtained the necessary approvals to advise the group.  Nevertheless, Defendants stated that his involvement could violate union rules if he met with the group during his duty hours.

37.      With the removal of Mr. Wilson as NORML ISU's advisor, Defendant Hill (who was a driving force in revoking approval of the t-shirt design) offered to act as NORML ISU's interim adviser until they found someone else on a permanent basis.  NORML ISU had little choice but to accept this "offer," as ISU requires that each student activity group have a faculty advisor to maintain its status as a registered student organization.

38.      ISU psychology professor Eric Cooper became NORML ISU's permanent faculty adviser in February 2013.  Nevertheless, Defendant Hill has not relinquished his position as the group's "interim" adviser.

**(2)      New Guidelines Implemented Because of T-shirt Design Controversy**

39.      In response to critical comments from state legislators and others about NORML ISU's initial t-shirt design, the ISU Trademark Office drafted revisions to ISU's Trademark Guidelines.  Effective January 16, 2013, the Trademark Guidelines included the following relevant restriction at Section 6(e):

No designs that use University marks that suggest promotion of the below listed items will be approved: dangerous, illegal or unhealthy products, actions, or behaviors. . . .   [D]rugs and drug paraphernalia that are illegal or unhealthful . . . .

40.     Defendant Madden acknowledged to NORML ISU's faculty advisor Cooper that the January 16, 2013 revision to the ISU Trademark Guidelines "was done as the result of a number of external comments including interpretations that the t-shirt developed indicated that Iowa State University supported the NORMAL [sic] ISU advocacy for the reform of marijuana laws …. The Guidelines were revised with the addition of 6e to clarify that ISU marks cannot be used in connection with the listed items."

41.     Despite the purported attempt to clarify ISU's policy, the new Trademark Guidelines are vague and overbroad on their face and allow unbridled administrative discretion. Section 6(e) prohibits expression that "promotes" any "dangerous, illegal or unhealthy products, actions or behaviors" but does not define the term "promote."  In this regard, Section 6(e) does not make clear how its prohibition against promoting illegal drug use applies to NORML ISU – a group that advocates legalization of marijuana through the established political process.  Nor does Section 6(e) explain what constitutes a "dangerous" or "unhealthy" product, action, or behavior, or by what standard such attributes will be determined.

### (3)     March 2013 Meeting

42.     Sometime around February 2013, Joshua Montgomery, one of the founders of NORML ISU, invited Steven Lukan, the Director of the Iowa Office of Drug Control Policy, to an event the group was planning with prominent advocates of marijuana legalization.  In the email invitation, Montgomery encouraged Lukan to attend by saying, in essence, "please don't be afraid to come to this event."  The email also mentioned that the group had a new t-shirt

design that stated "NORML ISU Student Chapter" on the front, and "We Are NORML" on the back.

43.     On information and belief, Lukan contacted Defendant Leath to complain that NORML ISU members were still being permitted to design t-shirts advocating marijuana legalization using ISU's trademarks.

44.     On information and belief, Defendant Leath directed Defendant Hill to address the situation involving the t-shirt designs and the group's contact with Lukan.  Defendant Hill immediately scheduled a meeting with Montgomery, which Plaintiff Furleigh and a third student, Sam Burmeister, also attended.

45.     At this meeting, Defendant Hill expressed displeasure on behalf of ISU and Leath that Montgomery had contacted Lukan.  Defendant Hill accused Montgomery of "threatening" Lukan by telling him not to be afraid to attend the event.

46.     Defendant Hill took this action after remaining in his position as "interim advisor," even after NORML ISU had secured a new permanent advisor.  Because Defendant Hill is a very highly placed university official, his continuing oversight has had a chilling effect on NORML ISU members and their comfort in advocating freely for legalization of marijuana.

### (4)     Enforcement of the Trademark Guidelines: NORML ISU's June 2013 T-shirt Design Rejected

47.     On February 12, 2013, after the guideline revisions, the Trademark Office approved a t-shirt design that said "NORML ISU" across the front and "We are NORML" across the back.  The ISU Trademark Office approved another design on April 15, 2013, that simply stated "NORML ISU Student Chapter" on the front.

48.     In May or June 2013, NORML ISU submitted another t-shirt design with the slogan "NORML ISU Supports Legalizing Marijuana" with a cannabis leaf graphic on the front.

The back of the t-shirt spelled out the name of the organization:  National Organization for the Reform of Marijuana Laws.  On June 13, 2013, the Trademark Office rejected that design.

49.     The Defendants based the rejection on varied claims that the design "represented a call to action," that the message stating NORML ISU's position might be misconstrued as the University's position, that the proposed design was unnecessarily "sensational" and would not change the public's perception of marijuana.

50.     Defendant Zimmerman explained to NORML ISU's faculty advisor Cooper that she rejected the June t-shirt design because:

> T-shirts are walking billboards to advertise many things. It can be an opportunity or failure. You have suggested a T-hirt [sic] design with the organization name and the statement 'Legalize Marijuana' with a graphic cannabis leaf. 'Legalize Marijuana' is a call to action but it does not suggest any specific way your organization is making that happen.

Defendant Zimmerman also claimed that "[i]t can easily be inferred by the general public that the students attending Iowa State University want to legalize marijuana for their use and by default, the university must support the effort."

51.     Defendant Zimmerman also asserted that the proposed design had "a certain shock or attention grabbing sensationalism" and that the shirts "do not further your cause as an advocate for change in the laws or trying to change the publics' [sic] perception of marijuana."

52.     According to the website of the *Iowa State Daily* newspaper, Defendant Hill supported the Trademark Office decision to deny approval for NORML ISU's June 2013 design.

53.     NORML ISU did not appeal the decision to reject the design because doing so would have been futile.  Defendant Madden, who oversees the Trademark Office that drafted the new Trademark Guidelines, was empowered to decide any appeal.  Defendant Madden had rescinded the approval of the first t-shirt, and then had acknowledged to NORML ISU's faculty

advisor Cooper that NORML ISU's t-shirt design is what prompted implementation of section 6(e).

### (5) Enforcement of the Trademark Guidelines: NORML ISU's March 2014 T-shirt Designs Rejected

54.　In March 2014, NORML ISU submitted a t-shirt design to the Trademark Office for approval that repeated the phrase "NORML ISU" but varied the ink color to create the outline of a cannabis leaf.　*See* Ex. C.

55.　On April 10, 2014, the Trademark Office rejected the design stating:

> "Conceptually, this cannot be approve [sic] as submitted. The full organization name needs to be included. Suggest this be inserted above Student Chapter. Also the silhouette of the marijuana leaf needs to be removed as this is a recognized symbol of an illegal drug in which the university's guidelines state the following:　'No designs that use University marks that suggest promotion of the below listed items will be approved:
>
> • dangerous, illegal or unhealthy products, actions or behaviors;
>
> • drugs and drug paraphernalia that are illegal or unhealthful'.
>
> Please revise and resubmit."

56.　Because of this rejection, NORML ISU has not produced the t-shirt, and its members have been restricted in their ability to express their beliefs for fear of facing adverse action for violating ISU's policies.

57.　ISU was put on notice that its Trademark Guidelines are unconstitutional.　On March 11, 2014, the Foundation for Individual Rights in Education ("FIRE"), a non-partisan, non-profit, civil rights organization that protects rights of free expression on college and university campuses, sent a letter to ISU's President, Defendant Leath, providing detailed analysis to demonstrate that the university's application of its Trademark Licensing Policy to NORML ISU violated the First Amendment.

58.     ISU's Associate General Counsel, Keith N. Bystrom, responded to FIRE's letter on April 29, 2014 and disputed the claims that the prohibitions contained in paragraph 6(e) are unconstitutionally broad, impermissibly vague and chill student organizations' ability to obtain approval to use ISU's trademarks.

## VI.     CAUSES OF ACTION

### COUNT I

**As-Applied Violation of Plaintiffs' Right to Free Speech Under
the First and Fourteenth Amendments (42 U.S.C. § 1983)
(All Defendants)**

59.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

60.     The First and Fourteenth Amendments extend to campuses of state colleges and universities.  *Healy v. James*, 408 U.S. at 180.

61.     All of the acts of Defendants were taken under the color of law.

62.     ISU and Defendants bear the burden of justifying any regulation of expressive activity.

63.     Graphics and color are "entitled to the First Amendment protections afforded verbal" speech.  *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 646 (1985).  The "'use of illustrations or pictures … serves important communicative functions:  it attracts the attention of the audience … and it may also serve to impart information directly,'" and "[t]he same is undoubtedly true of … color."  *Commonwealth Brands, Inc. v. U.S.*, 678 F.Supp.2d 512, 522 (W.D. Ky. 2010) (quoting *Zauderer*, 471 U.S. at 646), *aff'd in relevant part sub nom.*, *Discount Tobacco City & Lottery, Inc. v. U.S.*, 674 F.3d 509 (6th Cir. 2012).

64.     By withdrawing approval of NORML ISU's t-shirt design in November 2012, Defendants suppressed Plaintiffs' message because of its viewpoint.

14

65.     Defendant's modification of ISU's trademark design standards and their application of the new standards to deny approval of NORML ISU's proposed t-shirt designs in January 2013, further suppressed Plaintiffs' message because of its viewpoint.

66.     Defendants' intervention into NORML ISU's internal affairs by, among other things, Defendant Hill's continuing involvement as "interim" advisor, has impeded Plaintiffs' ability to disseminate their organization's message.

67.     Defendants have explicitly and implicitly chilled Plaintiffs' free expression and have deprived Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the Constitution of the United States.

68.     The denial of constitutional rights is irreparable injury *per se*, and Plaintiffs Gerlich and Furleigh are also entitled to declaratory and injunctive relief, including a declaration that Defendants violated their First Amendment rights.

69.     Defendants Madden and Zimmerman's actions, as endorsed by Defendants Leath and Hill, violated  clearly established constitutional rights of which all reasonable administrators and staff should have known, rendering them liable to Plaintiffs Gerlich and Furleigh for damages under 42 U.S.C. § 1983.

70.     Additionally, Plaintiffs are entitled to damages based on the actions of Defendants Madden and Zimmerman, as endorsed by Defendants Leath and Hill in an amount to be determined by the evidence and this Court, and the reasonable costs of this lawsuit, including Plaintiffs' reasonable attorneys' fees.

## COUNT II

### Facial Challenge to Violation of Right to Free Speech Under the Plaintiffs' First and Fourteenth Amendment Rights (42 U.S.C. § 1983) – Overbreadth (All Defendants)

71.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

72.     A public university such as ISU and its officers and administrators may not punish "a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep [.]'" *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); *Doe v. Univ. of Mich.*, 721 F. Supp. 852, 864 (E.D. Mich. 1989).  Any regulation that does so is invalid "'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression[.]'" *Hicks*, 539 U.S. at 118-19.

73.     Section 6(e) of the ISU Trademark Guidelines is unconstitutional because it prohibits using ISU's marks in association with any message that promotes "dangerous, illegal or unhealthy products, actions or behaviors."

74.     Under the plain language of this overbroad policy, the football team could be prevented from using ISU's logo or mascot because engaging in a sport with a high incidence of injury is a "dangerous behavior."  Likewise, the insignia of the Cyclone Battalion (Army ROTC) could be deemed unacceptable under the policy because military training, not to mention combat, is dangerous.  Furthermore, the ISU Game Development Club could be prevented from using the ISU's marks because spending too much time creating and playing video games can cause eye strain, may contribute to obesity by promoting sedentary behavior, and is asserted to have other "unhealthful" effects.

75.     Section 6(e)'s prohibition against promoting "drugs and drug paraphernalia that are illegal or unhealthful" is also overbroad.

76.     Section 6(e)'s open-ended prohibition enables the Defendants to enforce the Trademark Guidelines to deny the use of ISU's marks to a wide range of student activities and organizations.  The overly broad limitation vests ISU's officials with the ability to discriminate against organizations whose political message is disfavored.

77.     As a direct result of the Defendants' enforcement of ISU's Trademark Guidelines, Plaintiffs, and in fact all students at ISU, are deprived of their right to free speech under the First and Fourteenth Amendments to the Constitution.

78.     The denial of constitutional rights is irreparable injury *per se*, and Plaintiffs Gerlich and Furleigh are also entitled to declaratory and injunctive relief, including a declaration that Defendants violated their First Amendment rights.

## COUNT III

**Facial Challenge to Violation of Right to Free Speech Under the Plaintiffs'
First and Fourteenth Amendment Rights (42 U.S.C. § 1983) – Vagueness
(All Defendants)**

79.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

80.     A state enactment is void for vagueness if the prohibitive terms are not clearly defined such that a person or ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

81.     Defendants' policies restricting speech fail to adequately advise the students subject to discipline of the obligations the policies create, and are unconstitutionally vague on their face in violation of the First Amendment and of the due process guarantee of the Fourteenth Amendment to the U.S. Constitution.

82.     Vague and undefined policies also vest the public officials who must enforce them with unbridled discretion that may be exercised in an inconsistent or discriminatory manner.

83.     Defendants' policies do not provide standards to guide the discretion of public officials at ISU when reviewing requests under the ISU Trademark Guidelines to use ISU's marks.   This empowers such public officials to administer the policy on the basis of impermissible factors such as the viewpoint to be expressed or through arbitrary application.

84.     The policies set forth in Section 6(e) are unconstitutionally vague.   The policies prohibit promotion of "dangerous, illegal or unhealthy products, actions or behaviors" and "drugs and drug paraphernalia that are illegal or unhealthful" but fail to define what constitutes a "dangerous" or "unhealthy."   The policies provide no criteria that enable students to understand what University officials might consider "dangerous" or "unhealthful."

85.     Defendants denied NORML ISU authorization to have a t-shirt with the outline of a cannabis leaf because they claimed it promoted drugs and dangerous and unhealthy behaviors.

86.     ISU has, however, authorized its mark to be used in the insignia and on the website for ISU Cuffs, "an educational group for people who want to learn more about alternative sexuality such as kink, fetish, BDSM, and other expressions of safe, consensual, and non-exploitative human sexuality."   *See* Iowa State University Cuffs (available at http://www.cuffs.stuorg.iastate.edu/).   In its FAQ, Cuffs states: "Bondage is by far the most common kinky practice, but it is also among the most difficult things to do without causing harm."   *Id.*   It also states that BDSM is not any more [dangerous] than other contact sports" but that "there are some risks involved."   *Id.*

87.     ISU's Trademark Guidelines do not explain the criteria that Defendants and other ISU administrators use to determine whether an activity is dangerous or unhealthy.  A person of normal intelligence would have no way to know that promoting BDSM with the image of handcuffs is acceptable under the policy, while advocating for marijuana legalization using an outline of a marijuana leaf violates the policy.

88.     Because of Defendants' policies and actions, Plaintiffs have suffered and continue to suffer irreparable harm.  Plaintiffs are therefore entitled to injunctive relief, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

89.     The denial of constitutional rights is irreparable injury *per se*, and Plaintiffs Gerlich and Furleigh are also entitled to declaratory and injunctive relief, including a declaration that Defendants violated their First Amendment rights.

## COUNT IV

### Declaratory Judgment and Injunction (28 U.S.C. § 2201, et seq.)
### (All Defendants)

90.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

91.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution.  A judicial declaration is necessary and appropriate at this time as to Counts I through III above.

92.     Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to advocate for the legalization of marijuana without being subjected to viewpoint-based speech restrictions that are not narrowly tailored to serve a substantial governmental interest and that vest ISU officials such as the Defendants with unbridled discretion.

93.     To prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring ISU's policies unconstitutional.

94.     Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting the Defendants from enforcing their restrictions on Plaintiffs' expressive activities to the extent they are unconstitutional, to prevent the ongoing violation of Plaintiffs' constitutional rights. Plaintiffs and their fellow students are suffering irreparable harm from continued enforcement of the ISU's unconstitutional Trademark Guidelines, monetary damages are inadequate to remedy their harm, and the balance of equities and public interest both favor a grant of injunctive relief.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Gerlich and Furleigh respectfully request that the Court enter judgment against Defendants and provide Plaintiffs the following relief:

A.      A declaratory judgment stating that ISU's Trademark Licensing Policy is unconstitutional facially and as-applied, and that it violates the Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

B.      A permanent injunction restraining enforcement of Defendants' unconstitutional policies and practices;

C.      A declaratory judgment that Defendants' censorship of Plaintiffs' expressive activity by refusing to authorize their t-shirt designs violated their First and Fourteenth Amendment rights;

D.      Monetary damages in an amount to be determined by the Court to compensate for the Defendants' interference with Plaintiffs' expressive activity and political advocacy.

E.      Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees,

in accordance with 42 U.S.C. § 1988 and other applicable law; and

F.      All other further relief to which Plaintiffs may be entitled.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues properly triable by jury in this action.

DATED:  July 1, 2014

Respectfully submitted,


By:   /s/ Michael A. Giudicessi
ROBERT CORN-REVERE
    (*pro hac vice motion forthcoming*)
    bobcornrevere@dwt.com
RONALD G. LONDON
    (*pro hac vice motion forthcoming*)
    ronnielondon@dwt.com
LISA B. ZYCHERMAN
    (*pro hac vice motion forthcoming*)
    lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499

MICHAEL A. GIUDICESSI
    Michael.giudicessi@faegrebd.com
FAEGRE BAKER DANIELS LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309-8011
Telephone: (515) 248-9000
Facsimile: (515) 248-9010

Attorneys for Plaintiffs Paul Gerlich and Erin Furleigh

21