**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **PAUL GERLICH and ERIN FURLEIGH,**<br><br>  Plaintiffs,<br><br>v.<br><br>**STEVEN LEATH, WARREN MADDEN, THOMAS HILL, and LEESHA ZIMMERMAN,**<br><br>  Defendants. | Case No. 4:14-cv-264<br><br>**REPLY TO PLAINTIFFS' RESISTANCE TO DEFENDANTS' MOTION TO DISMISS** |

Defendants' motion to dismiss and Plaintiff's resistance ask this Court to determine *whose* speech is at issue, specifically, whether it is government speech (through ISU's control of its trademarks) or student group speech. As raised in Defendants' motion and explained further below, this case clearly concerns government speech through control of its trademarks, which is not subject to First Amendment, thus requiring dismissal of Plaintiffs' Complaint. But even if this case involves student group speech, as Plaintiffs argue in their resistance, Defendants' actions did not violate the First Amendment and are entitled to qualified immunity under the circumstances of this case.

  1. Plaintiffs' First Amendment Rights Are Not At Issue

As argued in Defendants' motion to dismiss, Plaintiffs have no First Amendment right to the use of ISU's trademarks, which are the property of ISU that, by their use, suggest ISU's endorsement of particular messages. In this way, ISU's trademarks are *government* speech. The United States Supreme Court enunciated the law on government speech in the analogous case of *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) as follows:

1

> If petitioners [(the government defendants)] were engaging in their own expressive conduct, then the Free Speech Clause has no application. The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech. See *Johanns v. Livestock Marketing Assn.,* 544 U.S. 550, 553, 125 S.Ct. 2055, 161 L.Ed.2d 896 (2005) ("[T]he Government's own speech ... is exempt from First Amendment scrutiny"); *Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 139, n. 7, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973) (Stewart, J., concurring) ("Government is not restrained by the First Amendment from controlling its own expression"). A government entity has the right to "speak for itself." *Board of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217, 229, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000). "[I]t is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), and to select the views that it wants to express. See *Rust v. Sullivan,* 500 U.S. 173, 194, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *National Endowment for Arts v. Finley,* 524 U.S. 569, 598, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (SCALIA, J., concurring in judgment) ("It is the very business of government to favor and disfavor points of view").

*Pleasant Grove*, 555 U.S. 460, 467-68.

In *Pleasant Grove*, the city accepted a permanent monument of the Ten Commandments for placement in a city park but later rejected a permanent monument of "the Seven Aphorisms of SUMMUM" offered by the Plaintiff religious organization Summum for placement in the same park. After the initial rejection of the Summum monument, the city passed a resolution memorializing its policy to require park monuments to directly relate to the city's history or a group's longstanding ties with the community. Plaintiff sought an injunction requiring the city to accept the monument for display in the park, arguing the city's acceptance of the Ten Commandments and denial of the Seven Aphorisms was tantamount to viewpoint discrimination in violation of the Free Speech Clause of the First Amendment.

The United States Supreme Court rejected this argument by declaring the city's actions were government speech not subject to the Free Speech Clause of the First Amendment. This

was because "the City has 'effectively controlled' the messages sent by the monuments in the Park by exercising 'final approval authority' over their selection. The City has selected those monuments that it wants to display for the purpose of presenting the image of the City that it wishes to project to all who frequent the Park." *Id*. at 473 (citation omitted).

The same is true in the instant case where ISU and Defendants have "effectively controlled" the messages conveyed through the usage of ISU trademarks by exercising "final approval authority" over their usage, with particular regard to "the image ISU wishes to project" to the public. The *Pleasant Grove* analysis also shows that ISU's trademark policies are not overbroad or vague because they regulate government speech, not private speech. Plaintiffs' Complaint must therefore be dismissed because they have no First Amendment right to dictate ISU's government speech, specifically by exercising control over its trademarks.

2. There Was No Infringement of Plaintiffs' Speech

Even if ISU's exercise of control over its trademarks was not government speech, the United States Supreme Court has made clear that "[a] school must [] retain the authority to refuse to sponsor student speech that might reasonably be perceived to advocate drug or alcohol use…" *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988). Plaintiffs' complaint alleges exactly this scenario—i.e., ISU's refusal to sponsor speech with its trademarks perceived to advocate drug use. *See, e.g.,* Complaint ¶¶33, 34, 40, 50. Defendants undisputedly exercised the same authority that *Hazelwood* held did *not* violate the First Amendment.

This fact, taken alone, would require dismissal of Plaintiffs' complaint. But here the challenged exercise of this authority is entitled to the additional protection of ISU's federal trademark rights (Complaint at ¶25), which, as stated in Defendants' motion to dismiss, are property rights that "do not yield to free speech rights when adequate alternative avenues of

communication exist." *Mut. Of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 402 (8th Cir. 1987) (citing *Lloyd Corp., Ltd. V. Tanner*, 407 U.S. 551, 567 (1972)). Under this law and the facts of the Complaint, no First Amendment violation can have occurred because Defendants either exercised government speech or exercised a school's recognized authority to refuse to sponsor student speech regarding drug use.

Indeed, schools are "allow[ed] [] to restrict student expression that they reasonably regard as promoting illegal drug use." *Morse v. Frederick*, 551 U.S. 393, 408 (2007). In *Morse*, the United States Supreme Court held a high school principal did not violate the First Amendment when she disciplined a student for displaying a banner stating "BONG HiTS 4 JESUS" at a school event. *Id*. In so holding, that court held that schools can restrict speech reasonably believed to promote illegal drug use because, among other things, deterring drug abuse "is an important—indeed, perhaps compelling" interest of schools. *Id*. at 407 (citations omitted).

Here, the speech at issue is comparable to *Morse* to the extent it involves school-related speech regarding illegal drugs. But unlike *Morse*, here the Plaintiffs were *not* disciplined for their speech. Instead, Defendants merely applied the approval process standards for use of ISU's registered trademarks resulting in the approval of some, but not all, of Plaintiffs' proposed t-shirts. Plaintiffs' Complaint admits ISU's motive was to avoid confusion of its trademarks with endorsement of NORML's agenda. Complaint ¶¶33, 34, 39 (prohibiting the use of marks to suggest ISU's "promotion … of drugs"). *See Hazelwood*, 484 U.S. at 273 (schools "do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns.").

Given the similarity of the legitimate pedagogical concerns upheld in *Hazelwood* and *Morse* to those at issue here, Plaintiffs have failed to state a claim that Defendants' control of ISU's trademarks in conjunction with school-related speech concerning illegal drugs violates their First Amendment Rights.

Contrary to Plaintiffs' resistance, Defendants did not deny Plaintiffs a benefit at all, but instead simply required that ISU's trademarks be used only for authorized purposes. This is the same rationale endorsed by the United States Supreme Court in *Rust v. Sullivan*, 500 U.S. 173, 196 (1991), where the court found no First Amendment violation when the Department of Health and Human Services prohibited Title X projects from engaging in activities advocating abortion. In so ruling, the court stated "the Government is not denying a benefit to anyone, but is instead simply insisting that public funds be spent for the purposes for which they were authorized." *Id.* The court noted the distinction between Title X *grantees*, whose entitlement to receive funds was not viewpoint-dependent, and Title X *projects*, for which the government could lawfully limit the use of Title X funds. *Id.*

The Title X project funds in *Rust* are analogous to the ISU trademarks in the instant case. As in *Rust*, Defendants in the instant case did not deny Plaintiffs a benefit, but simply insisted that ISU trademarks be used for the limited purposes for which they were authorized. As plead in Plaintiff's Petition, NORML's entitlement to receive student funds and use ISU trademarks was not viewpoint dependent—indeed, NORML in fact received student funds and approval to use ISU trademarks for *some* of its t-shirt designs. Rather, it was the *purpose* or *manner* in which ISU's marks were to be used that Defendants lawfully limited, both within First Amendment law and trademark law. For these reasons, Plaintiffs' Complaint must be dismissed.

Plaintiffs attempt to analogize their case to *Gay and Lesbian Students Assoc. v. Gohn*, 850 F.2d 361 (8th Cir. 1988), where the Eighth Circuit Court of Appeals found that a student body violated the First Amendment by denying a gay and lesbian organization university recognition based on their viewpoint. Unlike *Gohn*, however, Plaintiffs' student organization NORML has been recognized as a student group and funded by the university, thus cutting against Plaintiffs' argument of viewpoint discrimination. *See* Complaint ¶22. Indeed, not only has NORML ISU been recognized by ISU, it has also been "publishing a website, hosting events, conducting student outreach, and other related activities…" as well as "meet[ing] regularly to promote 'innovative ideas…'" regarding marijuana, all apparently without interference from ISU given the absence of any such allegation in Plaintiffs' Complaint. Thus, *Gohn* demonstrates that Plaintiffs have not experienced viewpoint discrimination in the traditional sense. Rather, Plaintiffs' Complaint seeks special and previously unrecognized entitlement to use school trademarks as they deem fit under the auspices of free speech. No such claim exists as a matter of law, requiring dismissal of Plaintiffs' Complaint.

    3. <u>Defendants are Entitled to Qualified Immunity</u>.

The above authority demonstrates Plaintiffs' perceived rights were not sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. Accordingly, Defendants are entitled to qualified immunity.

## CONCLUSION

Plaintiffs' claims should be dismissed for failing to allege sufficient facts to establish any constitutional right in the use of ISU's marks. Additionally, Plaintiffs' claims against each Defendant in his or her individual capacity should be dismissed because each Defendant has qualified immunity.

WHEREFORE, Defendants request that each count of Plaintiffs' Complaint be dismissed and for such other relief as the Court deems proper.

>Respectfully submitted,
>
>**THOMAS J. MILLER**
>Attorney General of Iowa
>
>**/s/ TYLER M. SMITH**
>**TYLER M. SMITH**
>**GEORGE A. CARROLL**
>Assistant Attorney General
>Hoover Building, Second Floor
>1305 East Walnut Street
>Des Moines, Iowa  50319
>PHONE:  (515) 281-8330
>FAX:  (515) 281-7219
>E-MAIL:  tyler.smith@iowa.gov
>E-MAIL:  george.carroll@iowa.gov
>ATTORNEYS FOR DEFENDANTS

*Original filed electronically.*

*Copy electronically served on all parties of record.*

| PROOF OF SERVICE |
| --- |
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on October 27, 2014: |
| ☐ U.S. Mail               ☐ FAX |
| ☐ Hand Delivery      ☐ Overnight Courier |
| ☐ Federal Express   ☐ Other |
| ☒ ECF System Participant (Electronic Service) |
| Signature: /s/Chelsey Abell |