**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

**PAUL GERLICH and ERIN FURLEIGH,**

Plaintiff(s),

vs.

**STEVEN LEATH, WARREN MADDEN,**
**THOMAS HILL, and LEESHA**
**ZIMMERMAN,**

Defendant(s).

No.  4:14-CV-264

**PLAINTIFFS' BRIEF IN SUPPORT**
**OF MOTION FOR ATTORNEY'S**
**FEES AND COSTS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1
II.    PROCEDURAL HISTORY.................................................................................. 4
       A.    The Complaint and 12(b) Motion ........................................................... 4
       B.    Discovery ................................................................................................. 5
       C.    Cross-Motion for Summary Judgment .................................................... 5
       D.    Defendants' Appeal to the Eighth Circuit and
             Award of Attorney's Fees and Costs ....................................................... 6
       E.    Settlement ................................................................................................ 7
III.   ARGUMENT ...................................................................................................... 7
       A.    Legal Basis for the Award of Fees.......................................................... 7
       B.    Calculation of the Lodestar..................................................................... 8
       C.    Calculation of Billing Rates.................................................................... 9
             1.    The Relevant Community ............................................................... 9
             2.    The Prevailing Market Rates ....................................................... 13
             3.    Baseline Claim for Fees ............................................................... 15
       D.    The Court Should Exercise Discretion to Ensure
             Plaintiffs' Counsel are Fully Compensated ........................................... 16
       E.    Costs are Compensable .......................................................................... 17
IV.    CONCLUSION................................................................................................. 18

## I.     INTRODUCTION

Counsel for Plaintiffs Paul Gerlich and Erin Furleigh hereby submit this Brief in support

of the award of attorney's fees and costs to Plaintiffs as the prevailing parties in this action under

42 U.S.C. § 1988, Fed. R. Civ. P. 54, LR 54.1, and pursuant to this Court's entry of Judgment of

January 25, 2016.   ECF No. 61.   Plaintiffs prevailed before this Court on their claim that Defendants Steven Leath, Warren Madden, Thomas Hill, and Leesha Zimmerman deprived them of their First Amendment rights under the U.S. Constitution.   This Court's ruling was thereafter affirmed by the U.S. Court of Appeals for the Eighth Circuit, rehearing was denied, and the decision on appeal is now final.   Accordingly, for the reasons that follow, Plaintiffs should be awarded fees and costs commensurate with their success in bringing this lawsuit.

In this action Plaintiffs were past presidents (and members) of NORML ISU, a recognized student organization at Iowa State University ("ISU") dedicated to advocating for reform of marijuana law, and a student chapter of the National Organization for the Reform of Marijuana Laws.   After a front page article in *The Des Moines Register* mentioned the group's political activities and pictured a NORML ISU T-shirt that incorporated ISU's trademarks, Defendants, concerned about a possible political backlash, took various actions to rein in the organization and Plaintiffs.

Plaintiffs prevailed before this Court on cross-motions for summary judgment, where this Court held Defendants' actions violated the First Amendment prohibition against viewpoint discrimination.   The Court granted Plaintiffs' motion as to Count I of the Complaint, which challenged Defendants' conduct as applied to Plaintiffs, but denied Plaintiffs' motion for summary judgment on their facial challenge to ISU's revised Trademark Guidelines.   Thereafter, the Eighth Circuit denied Defendants' interlocutory appeal, both initially and on panel rehearing, affirming the grant of summary judgment with respect to Plaintiffs' as-applied claim.   The

Eighth Circuit subsequently granted Plaintiffs' motions for attorney's fees and costs associated with Defendants' appeal.[1]

Following issuance of the Eighth Circuit's mandate and orders on fees and costs, the parties settled the remaining issues in the case.  *See* ECF No. 86.  As part of their settlement, the parties agreed that the Court's injunction be deemed permanent and continuing, resolved the damages claims remaining for trial, and decided the Court would retain jurisdiction over the parties and the case to determine the amount of a lodestar award of attorney's fees to be awarded to Plaintiffs and their counsel and costs.  *Id.* ¶¶ 9(b), (c).  The parties further agreed "Plaintiffs shall be deemed prevailing parties in the pending litigation, including without limitation as contemplated under 42 U.S.C. § 1983, and as such shall without further proof or motion be deemed entitled to an award of reasonable attorney fees and costs under 42 U.S.C. § 1988…." *Id.* ¶ 9(d).  In addition, the parties agreed that the amount of attorney's fees and costs awarded by this Court "shall be increased by the sum of $15,000 as payment for the time and costs Plaintiffs and their lawyers incur in connection with the fee application itself," and that this Court "shall enter final judgment for Plaintiffs and against Defendants for the total award of attorney fees and costs as so determined."  *Id.* ¶ 9(f).  On February 1, 2018, this Court entered an order approving the parties' agreements in full and setting a briefing schedule for Plaintiffs' application for attorney's fees and costs.  ECF No. 87.

Plaintiffs seek an award of attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the purpose of which is to ensure "effective access to the judicial process" to those with civil rights grievances.  H.R. Rep. No. 94-1558, at 1 (1976).  Under this provision, a prevailing plaintiff "should ordinarily recover an

---

[1] Defendants have satisfied that fee award, and the fees and costs on appeal are thus not a subject of this motion.  *See* ECF No. 86 ¶ 10; ECF No. 86-1 ¶ 1(c).

attorney's fee unless special circumstances would render such an award unjust." S. Rep. No. 94-1011, at 4 (1976), as reprinted in 1976 U.S.C.C.A.N. 5912 (citation omitted). *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). In cases such as this, "counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Hensley*, 461 U.S. at 430 n.4 (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444 (C.D. Cal. 1974)). The amount of such fees is governed by the same standards applicable to other types of equally complex federal litigation, and shall not be reduced "because the rights involved may be nonpecuniary in nature." *Id.*

Plaintiffs hereby seek an award of attorney's fees for this action of $569,346.60 for Davis Wright Tremaine LLP and $39,947.50 for Faegre Baker Daniels LLP. Counsel also seek an award of expenses in the amount of $27,349.62 for Davis Wright Tremaine LLP and $625.00 for Faegre Baker Daniels LLP. Additionally, based on the terms of the settlement agreement, Plaintiffs seek an additional $15,000 to cover costs associated with this fee petition. The details of these requests are set forth in this Brief and are supported by specific billing information and declarations.

## II.    PROCEDURAL HISTORY

### A.    The Complaint and 12(b) Motion

Undersigned counsel first became involved in this case in May 2014, and Plaintiffs filed a Complaint for declaratory and injunctive relief and damages on July 1, 2014. The Complaint named as defendants ISU President Steven Leath, Senior Vice President for Business and Finance Warren Madden, Senior Vice President for Student Affairs Thomas Hill, and Trademark Office Director Leesha Zimmerman. ECF No. 1. Pursuant to 42 U.S.C. § 1983, the Complaint alleged the Defendants violated Gerlich and Furleigh's First and Fourteenth Amendment rights.

On September 4, 2014, the Defendants moved to dismiss the Complaint.  In a January 6, 2015 order, this Court denied Defendants' motion, ruling that Plaintiffs' asserted First Amendment rights were not subsumed by federal Trademark law, rejecting Defendants' assertion that their actions were protected by the government speech doctrine, and denying Defendants qualified immunity and sovereign immunity from the suit.  *Gerlich v. Leath*, 2015 WL 4097755 (S.D. Iowa Jan. 6, 2015).

### B.      Discovery

Between February and June 2015, the parties engaged in written discovery and conducted seven depositions, including the deposition of each party and the deposition of Miles Lackey, President Leath's Chief of Staff who was identified as a possible witness by Defendants.  Neither party engaged in discovery-related motion practice other than negotiating and submitting a joint motion for entry of a stipulated protective order to address Defendants' concerns regarding the disclosure of information subject to their obligations under the Family Rights and Privacy Act (FERPA), 34 C.F.R. 99.1 *et seq*.  *See* ECF No. 32.

### C.      Cross-Motions for Summary Judgment

Following discovery, the parties cross-moved for summary judgment, and on January 22, 2016, this Court granted in part and denied in part each party's motion.  *Gerlich v. Leath*, 152 F. Supp. 3d 1152 (8th Cir. 2017).  The Court granted Plaintiffs' motion as to Count I of the Complaint, which challenged Defendants' conduct as applied to Plaintiffs, and rejected Defendants' invocation of the government speech doctrine.  At the same time, it denied Plaintiffs' motion for summary judgment on their facial challenge to the revised Trademark Guidelines.  The Court nevertheless permanently enjoined Defendants from enforcing trademark licensing policies against Plaintiffs "in a viewpoint discriminatory manner and from further prohibiting Plaintiffs

from producing licensed apparel on the basis that their designs include the image of a similar cannabis leaf." *Id.* at 1181.

**D.     Defendants' Appeal to the Eighth Circuit and Award of Attorney's Fees and Costs**

Defendants noticed an appeal of the Court's summary judgment decision seeking interlocutory review as a matter of right of the denial of their qualified immunity defense.  ECF Nos. 64 & 70.  Defendants moved to certify additional issues for appeal but this Court denied the motion.  ECF No. 68.  Defendants then filed a motion with this Court for a stay pending appeal, ECF No. 72, which this further Court denied.  ECF No. 74.  The Eighth Circuit also denied Defendants' request for a stay of the permanent injunction.

The parties briefed Defendants' appeal, oral argument was heard on December 14, 2016, and the Eighth Circuit issued its opinion on February 13, 2017.  *Gerlich v. Leath*, 847 F.3d 1005 (8th Cir. 2017).  The Eighth Circuit denied Defendants' interlocutory appeal, affirming the grant of summary judgment with respect to Plaintiffs' as-applied claim.  *Id.*  Following rehearing requested by Defendants, the panel issued a second opinion reaffirming its earlier ruling. *Gerlich v. Leath*, 861 F.3d 697 (8th Cir. 2017).  Defendants' subsequent petition for rehearing *en banc* was denied.

Plaintiffs requested fees and costs associated with Defendants' interlocutory appeal, including attorney and paralegal time devoted to preparation and defense of their motion for fees, as well as time expended to address Defendants' petitions for rehearing.  In total, Plaintiffs requested an award of $225,963.00 in attorney's fees and $1,358.09 in expenses to Davis Wright Tremaine LLP and $14,107.50 in attorney's fees and $1,684.33 in expenses to Faegre Baker Daniels LLP.  On September 20, 2017 the Eighth Circuit granted Plaintiff's request, awarding

$177,467.68 in attorney's fees and all expenses sought to Davis Wright Tremaine, and all attorney's fees and expenses sought to Faegre Baker Daniels LLP.  ECF No. 83.

### E.      Settlement

As detailed *supra* at 3, the parties negotiated a settlement agreement as to all remaining issues.  Germane to this motion, this Court approved the parties' agreement that Plaintiffs are to deemed prevailing parties in this action, that this Court is to resolve Plaintiff's request for reasonable fees and costs, and that whatever award the Court makes shall be increased by $15,000 to compensate Plaintiffs' counsel for their time preparing and briefing this motion.  *See* ECF Nos. 86, 87.

### III.      ARGUMENT

### A.      Legal Basis for the Award of Fees

There is no need for this Court to rule as to whether Plaintiffs are the prevailing parties entitled to reasonable attorney's fees and costs – the parties have already stipulated and agreed that is the case.  *See* ECF Nos. 86, 87.  Indeed, there would be no question that Plaintiffs are the prevailing party, in any event, since this Court ruled in their favor on their as-applied First Amendment claim and issued an order permanently enjoining Defendants from enforcing their trademark licensing policies against Plaintiffs "in a viewpoint discriminatory manner."  *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (plaintiff prevails for purposes of § 1988 when "actual relief on the merits of the his claim materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff."); *Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) (*en banc*) ("If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win.").

Plaintiffs are entitled to their full attorney's fees and expenses for having prevailed on their as-applied challenge, regardless of the Court's denial of their facial challenge, because they succeeded in their as-applied claim and this Court granted a permanent injunction to protect them from any further First Amendment violation. *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 764-65 (8th Cir. 2008) (plaintiffs who obtained permanent injunction in First Amendment action prevailing party). Thus, the fact that their facial claim was dismissed does not diminish Plaintiffs' prevailing party status because they still have won excellent results through their suit. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 772 (8th Cir. 2000) (rejecting argument that because plaintiff only prevailed on one of six original claims, fee award of 70% was too high).

## B.      Calculation of the Lodestar

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. This "lodestar" amount is presumed to be a reasonable fee. *Blum v. Stetson*, 465 U.S. 886, 897 (1984); *see also Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

In determining the number of hours reasonably expended on this action, counsel for Plaintiffs exercised significant billing judgment to eliminate the possibility of billing for duplicative or unproductive time. *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*) ("'billing judgment' is an important component of fee setting … no less" so in § 1988 cases). For example, only time recorded by the attorneys most responsible for assisting the clients is reflected in this request for fees. This means that all time was written off for attorneys who had a limited or peripheral role in the case, or whose contribution did not materially assist in

the litigation.[2]  Similarly no time is included in the request for purely administrative matters, or for issues that involved purely client maintenance.[3]  Moreover, no time is included for clerical and administrative matters.

As a consequence of this exercise of billing judgment, the resulting fee request errs on the conservative side by deleting more time than for typical paying clients.[4]  That said, the fee request includes attorney time that was required due to motion practices initiated by Defendants, including their motion to dismiss, desire for a joint stipulated confidentiality agreement, and their motion for stay.  As "[t]he Supreme Court has stated '[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"  *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (quoting *City of Riverside v. Ribera*, 477 U.S. 561, 580 n.11 (1986)).

## C.    Calculation of Billing Rates

### 1.    The Relevant Community

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.  *Blum v. Stenson*, 465 U.S. at 895-96 n.11; *see also Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 532 (8th Cir. 1999); *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).  As an initial matter, the "relevant community" in this case is Washington, D.C., not Des Moines, Iowa.  While the Eighth Circuit has held that the relevant community for calculation of the lodestar with respect to an attorney's serves in the district court or court of appeals is normally the forum district, *Jorstad*

---

[2] Declaration of Robert Corn-Revere ("Corn-Revere Decl.") (attached hereto as Ex. A) ¶¶ 10-14 (describing write-offs and reasons therefor).

[3] *Id.* ¶ 14.

[4] *Id.*

*v. IDS Realty Trust*, 643 F.2d 1305, 1313 (8th Cir. 1981); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991), it may depart from that rule where the special expertise of non-local counsel was essential to the case, or other special circumstances existed.  *E.g., ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir. 2004).

In setting the appropriate rate, various courts have held special expertise may be required in First Amendment cases to provide skillful representation.  *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (district court did not abuse its discretion when it "noted the attorneys had expertise in First Amendment litigation, which provided additional support for higher hourly rates").  In *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995), for example, the Eighth Circuit granted Chicago-based counsel their market rate, pointing out that although "competent South Dakota lawyers could have handled" the civil rights cause of action, "[t]he lawyers who actually appeared for the plaintiffs … do this kind of work routinely" and "are leaders in the field of reproductive-rights law," with "extensive experience," allowing them to "handle the case in a shorter length of time than a local lawyer, without comparable experience would have need."  Awarding market-based rates to experienced counsel serves to ensure that "civil rights enforcement" is not limited to "those communities where the rates are sufficient to attract experienced counsel.  *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) (awarding market-based rates in First Amendment litigation).

Likewise, in *American Booksellers Ass'n, Inc. v. Hadnut*, 650 F. Supp. 324, 328 (S.D. Ind. 1986), the court awarded out-of-town rates to a New York City firm that represented plaintiffs in challenging the constitutionality of an "anti-pornography" ordinance, and in doing so found the firm's "handling of several other significant first amendment cases in the federal courts

and its filing of numerous amicus briefs before the Supreme Court" made it "unlikely that the plaintiffs could have obtained equal representation locally."  In another First Amendment case, the Southern District of Florida approved New York City rates in a Miami case because the lead counsel and his firm (Floyd Abrams of Cahill, Gordon & Reindel) were preeminent in the field of First Amendment litigation.  *Review Publ'ns, Inc. v. Navarro*, No. 89-1187-Civ, 1991 WL 252962 (S.D. Fla. Jun. 26, 1991).  The court found that, although "there are other well qualified and experienced attorneys in the South Florida area who specialize in First Amendment litigation," none had the "breadth and knowledge, experience and national renown on a par with" Mr. Abrams.  *Id*. at *4.  Numerous other courts have reached similar conclusions in similar cases.[5]

This case presented complex issues involving application of First Amendment principles and exceptions.  In this regard, Mr. Corn-Revere is an experienced constitutional law litigator with a national reputation who has argued numerous cases in various U.S. District Courts, Circuit Courts of Appeal, and the United States Supreme Court.[6]  He has been a member of the District of Columbia Bar since 1983, and formerly served as Chief Counsel to Chairman James H. Quello of the Federal Communications Commission.  Mr. Corn-Revere has written exten-sively on First Amendment, Internet and communications-related issues and has provided expert

---

[5] *See, e.g., Patterson v. Balsamico*, 440 F.3d 104, 124 (2d Cir. 2006) (section 1988 "requires that the district court, in addition to taking judicial notice of rates awarded in prior cases, consider any evidence the parties wish to present and determine the prevailing rate within the relevant community for attorneys of comparable skill and experience performing work on comparable cases"); *Polk v. New York State Dep't of Corrections*, 722 F.2d 23, 25 (2d Cir. 1983) (rates for out of district counsel may be used upon a showing that special expertise of counsel from different district is required); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) (court approved award of San Francisco rates in a case tried in Sacramento because special expertise required in complex institutional reform litigation); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994) (awarding higher Richmond, Virginia rates in politically sensitive West Virginia case due to expertise needed for complex preemption and constitutional law issues).

[6] *See* Corn-Revere Decl. ¶ 6.

testimony before numerous congressional committees and the FCC.  He is co-author of the three-volume treatise Modern Communications Law, published by West Publishing Company, was a member of the Editorial Advisory Board of Pike & Fischer's Internet Law and Regulation, and is on the Advisory Board for the First Amendment Salon.  From 1987 to 2001, Mr. Corn-Revere taught First Amendment and media law at the Communications Law Institute of the Columbus School of Law at Catholic University of America.  He is a member and former chairman of the Media Institute's First Amendment Advisory Council, and is has been an Adjunct Scholar to the Cato Institute in Washington, D.C. for over twenty years.  From 2000-2002, Mr. Corn-Revere served on the Board of Trustees of the Freedom to Read Foundation, an affiliate of the American Library Association.  He is a past President and National Chairman of the First Amendment Lawyers Association, and has been an officer and Board member since 2010.

Plaintiffs-Appellees' additional counsel also have special expertise in First Amendment and constitutional law litigation.  Ronald London has been has been a member of the Maryland Bar since 1995, and the District of Columbia Bar since 1997.[7]  He practices media and communications law, with a focus on content regulation and privacy, in a variety of contexts.  He began his legal career as an associate in the mass media practice at the communications boutique Pepper & Corazzini, LLP (since merged into Womble Carlyle Sandridge & Rice, PPLC), and then in the communications practice of Hunton and Williams LLP, before arriving at Hogan and Hartson and moving with Mr. Corn-Revere to Davis Wright Tremaine LLP.  He has focused on representing clients in litigation and administrative law matters that involve First Amendment and related interests.   This has included serving as counsel challenging a variety of unconstitutional actions taken against protestors, students, and others, and in court challenges to

---

[7] *Id.* ¶ 7.

the constitutionality of federal and state laws.  He, too, is an officer of the First Amendment Lawyers Association.

Lisa Zycherman has been a member of the Maryland Bar since 2004, and of the District of Columbia Bar since 2005.[8]  She advises and represents reporters, publishers, technology companies, and advocacy non-profit organizations on a wide range of issues in media, First Amendment, and intellectual property law, and has represented individual clients in First Amendment civil rights cases under Section 1983.  Ms. Zycherman regularly represents coalitions of media *amici* in cases affecting First Amendment matters before U.S. Courts of Appeal and the U.S. Supreme Court.  She is a committee chairperson for the Media Law Resource Center, a sub-committee chairperson for the ABA Forum on Communications Law, and serves on the Board of the Council for Court Excellence, a non-profit organization focused on enhancing the justice system in the District of Columbia.

Local counsel Michael Giudicessi has been a practicing attorney in the State of Iowa for over 30 years, where he is also a member of the bar of the U.S. Supreme Court, Eighth Circuit Court of Appeals, and the United States District Courts for the Northern and Southern Districts of Iowa. Mr. Giudicessi is a senior partner of the law firm Faegre Baker Daniels LLP. Mr. Giudicessi has extensive experience counseling businesses and representing them in court on employment and commercial issues, as well as experience handling a wide range of content issues for communications and media clients. Declaration of Michael Giudicessi ("Giudicessi Decl.") ¶¶ 3-13 (attached hereto as Ex. B).

---

[8] *Id*. ¶ 8.

## 2.     The Prevailing Market Rates

In calculating the "prevailing market rate" the court must conduct a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). Rates awarded to civil rights counsel ordinarily should be on par with market rates for private attorneys engaged in other complex federal litigation. S. Rep. No. 94-1011, at 6 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5913.

Numerous courts have held that the actual rate charged by private counsel to private clients is generally the best evidence of a reasonable hourly rate. *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) (counsel's "regular hourly billing rate provides a useful starting point for determining a reasonable fee").[9] Here, the relevant hourly rates for attorneys and paralegals involved in this case are as follows: Corn-Revere ($692); London ($563); Zycherman ($440); Shapiro ($302); and Giudicessi ($475).[10] For DWT attorneys and paralegals, these represent a 13-17% discount on the prevailing market rates that DWT billed to clients in 2018,

---

[9] *See also, e.g., Adolph Coors Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93, 97 (D.D.C. 2005) ("An attorney's usual billing rate, when in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, is presumptively reasonable.") (internal quotation marks omitted); *National Ass'n of Concerned Veterans v. Secretary of Def.*, 675 F.2d 1319, 1324 (D.C. Cir. 1982) ("[A]ctual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate."); *Black Grievance Comm. v. Philadelphia Elec. Co.*, 802 F.2d 648, 652 (3d Cir. 1986) (market-rate value is "generally reflected in the attorney's billing rate"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("For private counsel with fee-paying clients, the best evidence is the hourly rate customarily charged by counsel or by her law firm."); *Islamic Ctr. of Mississippi, Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (attorney's customary billing rate is prima facie reasonable); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir. 1985) ("[H]ourly rates used to compute the lodestar are typically the rates lawyers charge clients who pay on a regular basis.").

[10] Corn-Revere Decl. ¶ 20; Giudicessi Decl. ¶¶ 21-24.

the year this petition is being filed, to better reflect the market rates in the jurisdiction where this litigation originated.[11]

### 3.   Baseline Claim for Fees

Based on the criteria listed above, the appropriate lodestar for each attorney or paralegal whose participation in the case is part of this fee request is as follows:

**Breakdown of Fees by Attorneys and Paralegals**

| Attorney | Total Hours | Rate | Lodestar |
|---|---|---|---|
| Corn-Revere | 349.9 | $692 | $242,130.80 |
| London | 77.2 | $563 | $43,463.60 |
| Zycherman | 530.2 | $440 | $233,288.00 |
| Shapiro | 167.1 | $302 | $50,464.20 |
| Giudicessi | 84.1 | $475 | $39,947.50 |

Another way to examine the fee request is to break down the fees generated by the major stages of the litigation, as follows:

**Breakdown of Fees by Stage of the Litigation – DWT**

| Stage of the Case | Total Hours | Lodestar |
|---|---|---|
| Complaint | 35.4 | $21,026.40 |
| Opposition to Dismissal | 93.9 | $59,473.50 |
| Discovery | 499.0 | $235,385.60 |
| Summary Judgment | 476.1 | $242,797.80 |
| Post-Judgment Assessment and Opposition to Motion to Stay | 20.0 | $10,663.30 |

---

[11] Corn-Revere Decl. ¶ 21.  *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (allowing compensation based on current rates for past services when payment of attorneys' fees is delayed); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987) ("In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993).

Finally, the baseline fee may also be broken down by examining the requests of each participating law firm:

**Breakdown of Fees by Law Firm**

| Law Firm | Total Hours | Baseline Fees |
|---|---|---|
| Davis Wright Tremaine LLP | 1,124.4 | $569,346.60 |
| Faegre Baker Daniels LLP | 84.1 | $39,947.50 |

Comparable rates have been granted in analogous First Amendment cases. In *Southeast Booksellers Ass'n v. McMaster*, C.A. 2:02-3747-23, slip op. (D.S.C. Sept. 8, 2005) (ECF No. 90), for example, the court awarded attorney's fees after granting a permanent injunction in response to a pre-enforcement challenge to South Carolina Internet content restrictions. In doing so, it approved a fee award for nine attorneys plus paralegals and law clerks, and it awarded the prevailing rates for attorneys from New York and Washington, D.C. The court awarded a total of $405,485.61 in attorney's fees, and approved hourly rates of $500 and $600 for the senior attorneys on the case. *Id*. at 24 & n.11. The court concluded that the attorneys' customary rates were justified because "[t]he litigated issues include[d] complicated First Amendment questions, and because Plaintiffs' counsel are specialists in these fields and regularly litigate cases involving the questions at issue." *Id*. at 13.

### D.     The Court Should Exercise Discretion to Ensure Plaintiffs' Counsel are Fully Compensated

Counsel acknowledge that the award of fees is left to the sound discretion of the Court. Yet, the overarching guidance is that an attorney should receive a fully compensatory fee where, as here, he has obtained excellent results for a plaintiff. *Hensley*, 461 U.S. at 435. Defendants aggressively pursued a novel defense to Plaintiffs' claims by seeking to extend the doctrine of

"government speech."   Expertise in First Amendment law was needed to put Defendants'
unrecognized theories into proper perspective, certainly in light of the Supreme Court's
admonishments that the government speech doctrine is "susceptible to dangerous misuse," by
governments to "silence or muffle the expression of disfavored viewpoints," thus requiring
courts to "exercise great caution before extending" the doctrine. *Matal v. Tam*, 137 S. Ct. 1744,
1758 (2017).   Rather than unnecessarily expand the doctrine, Plaintiffs were successful in
convincing this Court, and the Eighth Circuit, that Defendants' actions were viewpoint
discriminatory and not protected by any exception to the First Amendment.  This Court should
exercise its discretion to ensure that counsel are compensated for their work.

### E.      Costs Are Compensable

Reasonable expenses may be included in an award of attorney's fees under 42 U.S.C.
§ 1988.  *Williams v. ConAgra Poultry Co.*, 113 F. App'x 725, 728 (8th Cir. 2004) ("travel
expenses for attorneys and many other out-of-pocket expenses … are … properly characterized
as part of an attorney's fees award, which may include expenses that a law firm normally would
bill to its client"); *Muhammad v. Lockhart*, 104 F.3d 1069, 1069 (8th Cir. 1997) (affirming award
of "a reasonable attorney's fee and expenses under 42 U.S.C. § 1988").  Because significant out-
of-pocket expenses have been incurred by Plaintiffs or on their behalf in prevailing in this
lawsuit, any award of fees should include those expenses as well.

The costs and expenses sought herein consist of the types of charges typically levied by
the firm on its client, and were incurred, compiled, and recorded throughout the litigation in the
same manner as the firm generally does for all matters.[12]  As with the attorney hours reasonably
expended in the litigation, counsel for Plaintiffs exercised billing judgment to eliminate the

---

[12] Corn-Revere Decl. ¶¶ 15-17.

possibility of any questionable charges.[13]  For example, counsel removed costs incurred more as a result of the way the firm may conduct business rather than as a direct result of this litigation. Meal expenses and other charges that, while legitimately incurred during travel for the appeal, similarly have been excluded.  As a consequence, as with attorney time, the resulting request for costs and expenses is a conservative one that deletes more expenses than would be typical for paying clients.[14]  In this respect, Plaintiffs followed the same approach to expenses as they utilized as Appellees before the Eighth Circuit, which, as noted, awarded all expenses sought. *See supra* 6.  Accordingly, the remaining appropriate costs and expenses incurred by Plaintiffs' counsel in this litigation are as follows:

| Law Firm | Delivery Charges | Litigation Support | Court Reporter | Travel | Court Filing Fees | Total |
|---|---|---|---|---|---|---|
| Davis Wright Tremaine LLP | $653.88 | $6,600.89 | $9,068.89 | $11,025.96 | | $27,349.62 |
| Faegre Baker Daniels LLP | | | | | $625.00 | $625.00 |

## IV.   CONCLUSION

For the foregoing reasons, counsel for Plaintiffs respectfully request that the Court award $609,294.10 in attorney's fees, plus an additional $15,000.00 as payment for the time and cost Plaintiffs and their lawyers incur in connection with their fee application (*see* ECF No. 87), to be allocated among the participating law firms, and $27,974.62 in expenses to be allocated among the participating law firms, as set forth herein.

---

[13] *Id.* ¶ 19.

[14] *Id.*

Respectfully submitted,


By ____/s/ Robert Corn-Revere_____

ROBERT CORN-REVERE (*admitted pro hac vice*)
   bobcornrevere@dwt.com
RONALD G. LONDON (*admitted pro hac vice*)
   ronnielondon@dwt.com
LISA B. ZYCHERMAN (*admitted pro hac vice*)
   lisazycherman@dwt.com

MICHAEL A. GIUDICESSI
   michael.giudicessi@faegrebd.com
FAEGRE BAKER DANIELS LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309-8011
Telephone: (515) 447-4701
Facsimile:  (515) 248-9010

DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Telephone: (202) 973-4200
Facsimile:  (202) 973-4499

*Attorneys for Plaintiffs*
*Paul Gerlich and Erin Furleigh*